IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KENNETH JOHNSON,

    Plaintiff,

v.     CASE NO. 5:17-cv-110-MCR-GRJ

GEO GROUP INC, et al.,

    Defendants.

_____/

# REPORT AND RECOMMENDATION

Pending before the Court are motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Geo Group Inc. and C. Hollister (ECF No. 28); Correct Care Solutions, G. Poythress, and W. Rummel (ECF No. 30); and Julie Jones, the Secretary of the Florida Department of Corrections (ECF No. 31). Plaintiff has filed ECF Nos. 39 and 40, responses in opposition to the motions, and Defendants Correct Care Solutions, G. Poythress, and W. Rummel have filed ECF No. 41, a reply memorandum. The motions to dismiss are, therefore, ripe for review. For the reasons discussed below, the undersigned recommends that Defendants' motions to dismiss the Complaint for failure to exhaust administrative remedies be granted.

## I. BACKGROUND

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), is proceeding *pro se* pursuant to 42 U.S.C. § 1983. ECF No. 1 ("Complaint"). Plaintiff alleges that Defendants violated his Eighth Amendment rights in connection with an injury that Plaintiff sustained in the recreation yard at Graceville CF, a facility operated by the GEO Group, Inc. In April 2015, Plaintiff injured his right knee. Medical staff employed by Correct Care Solutions, a contractor of the DOC, evaluated Plaintiff and initially treated him with "Ace" wraps, ibuprofen, and crutches. Plaintiff was provided with a no-prolonged-standing pass and a low-bunk pass. Plaintiff was informed that x-rays would be taken at a later date. He continued to experience pain and limited mobility. X-rays taken five days later revealed a fractured patella. Twenty-three days after the injury, Plaintiff was transferred to the Lake Butler Reception and Medical Center for orthopedic treatment. On July 1, 2015, Plaintiff was transported to Jacksonville Memorial Hospital where he underwent knee surgery and was provided with an immobilizer brace. ECF No. 1 at 7-10.

Plaintiff was returned to Graceville CF in October 2015, and prison officials housed him in the infirmary because of his brace. After five days, Plaintiff was released to general population. ARNP Poythress took

Plaintiff's brace and placed it in the property room because Plaintiff was not permitted to have the brace in general population.  Plaintiff alleges that he was not offered any alternative for immobilizing his knee, and that he experienced ongoing pain.  In November, Plaintiff had a call-out for the hypertension clinic.  He complained about his knee pain to Dr. Rummel, who told Plaintiff to submit a sick-call request for that condition.  Plaintiff was seen almost a week later for his knee pain.  Dr. Rummel provided Plaintiff with an elastic knee support sleeve and one crutch.  Plaintiff alleges that the crutch was taken away by a nurse the next day.  *Id.* at 10-12.

Plaintiff alleges that he continued to experience constant pain and difficulty walking and bending the knee, and that one of the surgically-placed pins had begun to protrude against his skin, causing additional pain and swelling.  The support sleeve cut off circulation in the leg.  Plaintiff declared a medical emergency on December 29, 2015, because the protruding pin was causing bleeding.  He was placed in the infirmary and treated with ibuprofen, antibiotics, ointment, and a bandage.  He was discharged by ARNP Poythress two days later after x-rays were taken.  Although Plaintiff requested a wheelchair, walker, or cane, he was

discharged with crutches and an elastic knee brace. Plaintiff was told he would be placed on call-out for the x-ray results. Id. at 12-13.

Plaintiff alleges that the surgical site continued to drain blood and fluid. On February 1, 2016, he was taken to see an outside physician at Southern Orthopedic Specialists, P.A., in Panama City. Plaintiff alleges that a second surgery was discussed to repair the damage allegedly caused by the confiscation of his knee immobilizer. Plaintiff continued to experience problems with pain and drainage from the surgical site. In March 2016, Plaintiff was transferred from Graceville to Lake Butler for further treatment. Ultimately, in June 2016, Plaintiff underwent a second surgery at Jacksonville Memorial Hospital to remove hardware and fractured bone, and to repair the patella tendon. Plaintiff contends that the procedure was necessary because his recovery from the original surgery was compromised when his immobilizer knee brace was confiscated in October 2015. *Id.* at 14-17.

Plaintiff contends that the Defendants were deliberately indifferent to his serious medical needs in connection with the confiscation of his knee brace and his delayed medical care. Plaintiff seeks injunctive and monetary relief. *Id.* at 18-20.

Defendants' motions to dismiss assert, in summary, that (1) Plaintiff failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"); and (2) Plaintiff fails to state a claim upon which relief may be granted because his allegations suggest, at most, medical negligence that does not amount to a constitutional deprivation. ECF Nos. 28, 30, 31. In support of the motions to dismiss, Defendants have submitted evidence in the form of the declaration of Grievance Coordinator Alex Bellamy, copies of Plaintiff's grievances and responses thereto, and the declaration of Colonel Clay Hollister. ECF No. 29.

Plaintiff's responses in opposition to the motions focus on his argument that the Complaint adequately alleges an Eighth Amendment claim, and that he should be afforded an opportunity to engage in discovery in order to develop evidence with respect to the merits of his claims. Although Plaintiff argues that his medical records and grievances will provide evidence of Defendants' deliberate indifference, he does not contend that he did, in fact, exhaust his administrative remedies nor does he address Defendants' argument that this case should be dismissed for failure to exhaust administrative remedies. *See* ECF Nos. 40, 41.

## II. DISCUSSION

### A.  *PLRA Exhaustion Requirement*

Under § 1997e(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a); *see also Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock*, 549 U.S. 199, 211 (2002). The requirement to exhaust "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a

prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024–25 (7th Cir. 2002)).

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008.) Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211–12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the

Case 5:17-cv-00110-MCR-GRJ   Document 45   Filed 08/09/18   Page 8 of 15

*Page 8 of 15*

exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step; such findings are subject to review on appeal for clear error).[3]

### B. FDOC's Inmate Grievance Process

In Florida, the procedural rules an inmate must follow in order to properly exhaust administrative remedies are promulgated by the Florida Department of Corrections and contained the Florida Administrative Code. See Fla. Admin. Code Chapter 33-103 ("Inmate Grievances").[1]

To properly grieve an issue, an inmate must file a written informal grievance using Form DC6-236, (Rule 33–103.005). If the inmate is

---

[3] In *Whatley*, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of *Turner*, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the *de novo* standard of the first *Turner* step or the "clear error" standard of the second *Turner* step. 802 F.3d at 1213.

[1] The Graceville Correctional Facility has fully adopted the grievance procedures defined by the Florida Administrative Code, Chapter 33-103. *See* ECF No. 29, Exhibit 1, ¶ 3 (Declaration of Grievance Coordinator Alex Bellamy).

dissatisfied with the result of the informal grievance, he must next file a written formal grievance with the Warden's office using Form DC1-303, (Rule 33–103.006). Finally, if the inmate feels that the grievance has still not been satisfactorily resolved, he must submit a written appeal to the State Office of the Secretary ("Central Office") using Form DC1-303. (Rule 33–103.007). *See e.g. Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). (Rules 33-103.005, 33-103.006, and 33-103.007).

If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance to the institutional warden. *See* Fla. Admin. Code Rule 33–103.006(3)(e). This is known as a formal "Grievance of a Medical Nature." *Id.* at Rule 33–103.008. If the inmate is dissatisfied with the result of the medical formal grievance, the inmate may appeal to the Office of the Secretary. *Id.* at Rule 33–103.007. *See Thompson v. Nichols*, 3:11CV423/RV/CJK, 2015 WL 1484807, at *3 (N.D. Fla. 2015).

An inmate may not initiate a grievance directly with the Office of the Secretary except in cases of emergencies, reprisals, HIPAA violations, and other limited situations defined by Rule 33.103.007(6). In such cases, the direct grievance "shall state . . . that the grievance concerns either an

emergency or is a grievance of a reprisal . . . [or] HIPAA" and "must clearly state the reason for . . . by-passing the informal and formal grievance steps of the institution or facility[.]" *Id.*

The rules also establish strict time frames for inmates to file grievances. Pursuant to Rule 33-103.011 ("Time Frames for Inmate Grievances"), informal grievances must be received "within 20 days of the when the incident or action being grieved occurred," and formal grievances (including direct formal grievances of a medical nature) must be received "no later than 15 calendar days" from either: (1) the date on which the informal grievance was responded to; or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed. (Rule 33-103.011(1)(a), and (b)). Direct grievances to the Central Office must also be received within 15 days from the date on which the incident or action being grieved occurred. (*See* Rule 33-103.011(1)(d)).

Grievance appeals to the Office of the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." Rule 33-103.011(1)(c). To eliminate issues with mailing, the rules make provisions for appeals to the Secretary to be receipted locally at the institution/facility. *See* Rule 33-103.006(8).

## C.  Defendants' Evidence and Analysis

The evidence submitted by Defendants in support of the motions to dismiss reflects the following.  Regarding Plaintiff's claim that Defendants unreasonably delayed in providing care for his injured knee, on May 28, 2015, after being transferred from Graceville, Plaintiff filed an informal grievance with the Reception and Medical Center complaining about the time it was taking to get to surgery. ECF No. 29, Exhibit 1-A (Grievance No. 1505-209-103). The grievance was denied on June 16, 2015, and Plaintiff was informed of his right to appeal. *Id.* at 3 (Response to Grievance No. 1505-209-103).  Pursuant to Rule 33-103.011(1)(c), any appeal of that denial must have been received by the Office of the Secretary not later than July 1, 2015.  Plaintiff signed the appeal form on July 7, 2015, and it was received on July 14, 2015. *Id.* at 4.  The appeal was returned without action because it was untimely.  *Id.* at 5 (Secretary's Response to Appeal).

With respect to Plaintiff's claim that Defendants were deliberately indifferent for taking his immobilizing brace, on October 12, 2015, Plaintiff filed an informal grievance complaining that he was being confined in the infirmary because of the brace:

> Arrived 08 Oct 2015 and I am housed in the medical Infirmary. My assumption is that the "support brace" which medical gave me to wear is supposed to be some type of security issue. Mentally, I cannot function by being housed in the infirmary for

> non-chronic medical nature. This denies me the opportunities as everyone else in general population who has access to use the phone, sign up for law library, participate in educational/vocational program[s], etc., or to just interact among other inmates. This brace should not be an issue when it can be visually inspected by 'security' daily for hardware attachments. I am requesting to be placed back in the general population as before[.]

ECF No. 29, Exhibit 1-B (Grievance No. 159-1510-0063).

On October 13, 2015, before action was taken on the grievance, Plaintiff elected to give up the brace so that he could be placed in the general population. *Id.* Exhibit 2 ¶ 2 (Declaration of Colonel Clay Hollister, Chief of Security for Graceville CF). According to Colonel Hollister, he had discussed with Plaintiff the fact that the knee brace could not be worn in the general population because it contained small metal components that posed a security risk. Once Plaintiff elected to surrender the brace, there was no security reason to keep him out of the general population and Hollister authorized Plaintiff's transfer. Hollister states that "I did not take the brace or order it taken and had no further involvement in the issue." *Id.* Because Plaintiff's grievance only addressed his request to be returned to the general population, it was approved with the notation "inmate resolved." *Id.* Exhibit 1-B.

On October 26, 2015, Plaintiff initiated a medical grievance to the Warden complaining that he should be permitted to have the knee brace while housed in general population. *Id*. Exhibit 1-C (Grievance No. 1510-159-058). Plaintiff simultaneously filed a direct grievance to the Office of the Secretary asserting a "HIPPA violation." *Id.* Exhibit 1-D (Grievance No. 15-39924). The grievance submitted to the Office of the Secretary was in substance the same as the medical grievance filed the same day with the Warden and did not implicate HIPAA. *See id.* The direct grievance was denied as procedurally improper because Plaintiff did not initiate the claim at the institutional level. Plaintiff was afforded 15 days to resubmit the grievance at his institution. *Id*. Exhibit 1-D at 3 (Response to Direct Grievance No. 15-39924). Plaintiff did not resubmit the grievance at the institutional level. *See* ECF No. 29 Exhibit 1 (Declaration of Alex Bellamy, Grievance Coordinator).

On November 17, 2015, the Warden denied Plaintiff's medical grievance, explaining that inmates were not permitted to possess equipment with small metal parts in the general population and that Plaintiff did not have his brace because he voluntarily relinquished it in order to be transferred from the infirmary. ECF No. 29 Exhibit 1-C at

3 (Response to Grievance No. 1510-159-058).  The grievance response informed Plaintiff of his right to appeal.  *Id.*  Plaintiff did not appeal the denial of the grievance.  ECF No. 29 Exhibit 1 ¶ 5.C. (Declaration of Alex Bellamy).

Here, at the first step of the *Turner* analysis, Plaintiff has failed to point to any facts that controvert the Defendants' evidence showing that he did not complete the administrative remedy process with respect to any of the claims asserted in the Complaint.  *See Turner*, 541 F.3d at 1082 (Court first examines the factual allegations in the motion to dismiss and those in the plaintiff's response, "*and if they conflict*, takes plaintiff's version of the facts as true.") (emphasis added).

On this record, it is clear that Defendants have met their burden of proving that Plaintiff failed to exhaust his administrative remedies, and that Defendants' motions to dismiss for failure to exhaust are due to be granted.  *See id.* (if, after viewing any conflicting facts in Plaintiff's favor, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, "it must be dismissed.").  It is therefore unnecessary to the Court's resolution of the motions to move beyond the first *Turner* step because there are

no "disputed factual issues related to exhaustion." *Id.*; *Whatley*, 802 F.3d at 1213.

## III.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motions to Dismiss, ECF Nos. 28, 30, and 31, should be **GRANTED** for failure to exhaust administrative remedies before filing the Complaint.

**IN CHAMBERS**  this 9th day of August 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.